UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO: 8:20-cr-83-CEH-JSS

JOSE MANUEL VILLA PEREZ

_____/

**ORDER**

This matter comes before the Court upon the Report and Recommendation of the Magistrate Judge [Doc. 120] and Defendant Jose Manuel Villa Perez's Objections [Doc. 131]. The Magistrate Judge has recommended that the Court deny Defendant's Motion to Dismiss [Doc. 42], Supplemental Motion to Dismiss [Doc. 44], and Motion to Suppress [Doc. 45]. Defendant has raised challenges to a factual finding of the magistrate judge and to three conclusions of law. The Court, having considered the Report and Recommendation and the objections, will **ADOPT** the Report and Recommendation of the Magistrate Judge and **DENY** Defendant's Motion to Dismiss, Supplemental Motion to Dismiss, and Motion to Suppress.

**I.    BACKGROUND**

On February 15, 2020, Defendant Jose Manuel Villa Perez and his two co-defendants were charged, via criminal complaint, with conspiring to distribute, and possessing with the intent to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine. [Doc. 1]. They were subsequently indicted for the same charges on February 19, 2020. [Doc. 17]. The

charges arose after defendants were interdicted in international waters by the United States Coast Guard on February 9, 2020, and a search of their "Panga" boat led to the discovery of fifteen wrapped packages of cocaine. Defendants arrived in the country on February 17, 2020, through United States Customs and Border Protection ("CBP") in Miami, Florida, and were subsequently flown to the Tampa Bay area where they were taken to a U.S. Coast Guard Investigative Service ("USCGIS") facility in Clearwater. Upon arriving at the facility, an interrogation of Defendant was conducted, during which Defendant waived his *Miranda* rights and admitted to having been hired and agreeing to take part in a cocaine smuggling venture.

*Defendant's Motions*

Defendant moved to dismiss the indictment and sought to suppress evidence of the cocaine seized by the United States and his statements during the interrogation. He claims that dismissal is warranted as the United States cannot show that the Panga boat was subject to the jurisdiction of the United States as no one asked the crew to make a claim of nationality for the vessel. [Doc. 42 at pp. 4-12]. In a supplemental motion, Defendant also argues that dismissal is required as the Maritime Drug Law Enforcement Act (MDLEA) exceeded Congress' Article I powers and is unconstitutional and violates his right to due process under the Fifth Amendment. [Doc. 44]. Defendant argues that the Court should suppress evidence of the cocaine because the Coast Guard lacked reasonable suspicion to stop and board the Panga boat and that his statements during the interrogation are fruits of that seizure and should also be suppressed. [Dc. 45]. He also argues that the statements should be suppressed

2

because the Government delayed presenting him to a magistrate in order to interrogate him. *Id.*

### The United States' Responses

As to the motion to dismiss, the United States contends that jurisdiction exists because the Coast Guard asked all three defendants the nationality of the vessel and received none. [Doc. 58]. Additionally, the United States explains that "the vessel (1) flew no flag; (2) had no insignia of any nation; (3) had no registration; (4) lacked papers of any nation; (5) had no homeport; (6) [] none of the self-identified masters made an affirmative and sustainable claim of nationality when given an opportunity and requested to do so; and (7) the vessel was not registered in either Venezuela, or the D.R." *Id.* at p. 12. The United States also opposes the motion to suppress and contends that the Fourth Amendment does not apply to searches and seizures by the United States of a noncitizen/non-resident alien arrested in international waters or a foreign country. [Doc. 57 at pp. 4-10]. Moreover, the United States contends that Defendant does not have standing to object to the search of the vessel and that the Coast Guard had reasonable suspicion that the vessel was engaged in illegal activity. *Id.* at pp. 10-19. Lastly, the United States contends that Defendant has not shown that any delay in presenting him to a magistrate was "unnecessary" under Rule 5. *Id.* at pp. 19-31.

### The Magistrate Judge's Findings and Recommendations

At a hearing on these motions on September 9, 2020, the United States presented evidence from several witnesses including Lieutenant Denis Daly, the boarding officer, and Lieutenant Samantha Penate, the boarding team member who

translated. [Doc. 115]. Based on the evidence presented, the magistrate judge determined that these witnesses testified credibly and consistently that the vessel had no name, no flag, and no other indicia of nationality and that during right of approach questioning,[1] each crew member identified himself as the master of the vessel and was given the opportunity to make a claim of nationality for the vessel, but failed to do so. [Doc. 120 at pp. 4, 10-13]. Based on this evidence, the magistrate judge determined that the vessel was without nationality and therefore subject to the jurisdiction of the United States under § 70502(c)(1)(A), and recommended that the Court deny the motion to dismiss. *Id.* at pp. 14, 29. The magistrate judge also recommended denial of the supplemental motion on the basis that binding precedent from the Eleventh Circuit forecloses any argument that the MDLEA exceeds Congress' Article I powers and violates the Due Process Clause. *Id.* at pp. 18-19.

As to the motion to suppress, the magistrate judge determined that based on the circumstances, the Coast Guard had reasonable suspicion to board the vessel; that Defendant could not establish a subjective expectation of privacy that society would recognize as objectively reasonable, and thus standing; and that Defendant had not established that the delay in bringing him before a magistrate judge for first appearance was unreasonable. *Id.* at pp. 21-23, 25-29. But the magistrate judge recommended

---

[1] "The 'right of approach' is a doctrine of international maritime common law that bestows a nation's warship with the authority to hail and board an unidentified vessel to ascertain its nationality." *United States v. Romero-Galue*, 757 F.2d 1147, 1149 n.3 (11th Cir. 1985). "The 'right of approach' is codified by article 22 of the Convention on the High Seas." *Id.* (citing Convention on the High Seas art. 22, *opened for signature* Apr. 19, 1958, 13 U.S.T. 2312).

4

denial of the motion for a more fundamental reason, that the Fourth Amendment does not apply because Defendant is a non-citizen, with no identifiable ties to the United States, who was arrested in international waters. *Id.* at pp. 19-21.

### *The Objections*

Defendant now objects to the factual finding which is the basis of the magistrate judge's recommendation that the motion to dismiss should be denied, that is, the finding that defendants were asked about the nationality of the vessel. [Doc. 131]. He argues that this finding relies entirely on Officer Penate's testimony—as she was the only one who spoke Spanish—and that this testimony should be excluded for several reasons including that it is inconsistent with Officer Penate's written statement prepared after the interdiction. *Id.* at pp. 4-8.

Defendant then presents several grounds for rejecting the magistrate judge's recommendation to deny the motion to suppress. First, he argues that the Fourth Amendment is applicable to the Coast Guard's search and seizure of the vessel and defendants because the holding of *United States v. Tinoco*, 304 F.3d 1088, 1116 (11th Cir. 2002) has not been abrogated by a Supreme Court opinion or an *en banc* opinion from the Eleventh Circuit—as the prior panel rule requires. *Id.* at pp. 14-16. Moreover, he contends that defendants had a reasonable expectation of privacy in the area under the tarp, and therefore had standing to assert the protections of the Fourth Amendment. *Id.* at pp. 16-18. Further, Defendant contends that the United States did not have reasonable suspicion for the search because additional facts commonly indicative of drug smuggling and relied on by courts—including flight, the jettisoning

5

of cargo, some other furtive behavior by the crew, or the smell of drugs—were absent. *Id.* at p. 20. Lastly, Defendant objects to the magistrate judge's recommendation to reject his argument that unreasonable delay in presenting him to a magistrate judge warranted suppression of his confession. *Id.* at pp. 20-24. On this point, he argues that the reason for the delay in seeing a magistrate judge upon arrival in the country was unreasonable because the United States was on notice that defendants would have been brought to Miami, Florida on February 17, 2020, and could have taken steps to have a magistrate judge available that day even though it was a holiday, President's Day. *Id.*

## II. LEGAL STANDARD

Under the Federal Magistrates Act, Congress vests Article III judges with the power to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to various exceptions. 28 U.S.C. § 636(b)(1)(A). The Act further vests magistrate judges with authority to submit proposed findings of fact and recommendations for disposition by an Article III judge. 28 U.S.C. § 636(b)(1)(B). After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982). If specific objections to findings of facts are timely filed, the district court will conduct a *de novo* review of those facts. 28 U.S.C. § 636(b); *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir. 1988). If no specific objections to findings of facts are filed, the district court is not required to conduct a *de novo* review of those findings. *See Garvey*

6

*v. Vaughn,* 993 F.2d 776, 779 n.9 (11th Cir.1993); *see also* 28 U.S.C. § 636(b)(1). In that event, the district court is bound to defer to the factual determinations of the magistrate judge unless those findings are clearly erroneous. *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). Legal conclusions must be reviewed *de novo. Id.* Furthermore, objections to a magistrate judge's recommendation and report must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019).

### III.   DISCUSSION

Defendant has challenged the recommendations as to both the motion to dismiss and the motion to suppress. The Court will address each accordingly.

*The Motion to Dismiss*

The magistrate judge recommended granting the motion to dismiss based on a determination that the vessel was stateless and therefore subject to the jurisdiction of the United States. The magistrate judge relied upon the testimony of the two officers that defendants were asked to make a claim of citizenship for the vessel and failed to do so, having found these witnesses "were credible and appeared forthright." [Doc. 120 at p. 1]. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citing *Viehman v. Schweiker,* 679 F.2d 223, 227-28 (11th Cir.1982)). In judging the officers' credibility, the magistrate judge observed their demeanor and interest in testifying and considered explanations

7

provided to certain questions [Doc. 120 at pp. 11, 13]. "Therefore, in evaluating the factual version of events . . . we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.' " *Id.* (quoting *United States v. Eddy,* 8 F.3d 577, 580 (7th Cir.1993)).

Having reviewed the transcript of the hearing, the Court finds the magistrate judge's understanding of the facts to be believable. Officer Daly testified that he asked all the standard questions—including those relating to the nationality of the vessel—in English and they were relayed to defendants in Spanish. Officer Pennate corroborated this, testifying that the boarding officer read questions listed on a laminated sheet and she translated to defendants. She further testified that she has translated and interpreted these same questions before, including about the nationality of the vessel, as they are the ones they are trained to ask. She explained that her failure to document in her report that she had specifically asked the nationality of the vessel was a lapse in her judgment and that her report is intended to be more of a summary of what happened.[2]

Additionally, the determination that the vessel was stateless is amply supported by the officers' testimony. The vessel was unmarked, flagless, and bore no identifying marks. The defendants did not claim a nationality for the vessel when asked by the officers. As such, the magistrate judge is correct that the vessel was a vessel without nationality pursuant to 46 U.S.C. § 70502(d)(1)(B), because on request, the masters of

---

[2] The Court finds little merit to the remaining specific arguments raised by Defendant as to why Officer Pennate's testimony is not credible.

the vessel failed to make any claim of registry or nationality for the vessel. The Court will therefore overrule Defendant's objections to the magistrate judge's recommendation to deny the motion to dismiss.

### *The Motion to Suppress*

The magistrate recommended denial of each of the arguments presented by Defendant for suppressing evidence in this case. First, the magistrate judge explained that Defendant is not protected by the Fourth Amendment. The Court agrees. "[T]he Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien *arrested in international waters or a foreign country*." *United States v. Cabezas-Montano*, 949 F.3d 567, 593 (11th Cir. 2020). Defendant is a non-citizen/non-resident alien and was arrested on the high seas. As such, consistent with the decision in *Cabezas-Montano*, he is not protected by the Fourth Amendment protections. The Court does not find any merit to Defendant's argument that based on the "prior panel" doctrine, the Court is bound by the holding in *Tinoco*.[3] The *Cabezas-Montano* court relied on *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), in holding that the Fourth Amendment did not apply to the defendants. In *Verdugo-Urquidez*, the Supreme Court reasoned that "[t]here is . . . no indication that the Fourth Amendment was understood by contemporaries of the Framers to apply to activities of the United States directed against aliens in foreign territory or in

---

[3] In *Tinoco*, the court held that "[u]nder the Fourth Amendment, the Coast Guard may stop and board a foreign vessel in international waters if it has a reasonable suspicion that the vessel is engaged in activity that violates United States law." 304 F.3d at 1116.

9

international waters." *494 U.S.* at 267. The Court has not since back-pedaled on this statement. As such, the magistrate's reliance on *Cabezas-Montano* is not erroneous and the Court agrees that Defendant cannot rely on the Fourth Amendment as a basis to suppress evidence discovered during the search, as well as the confession given after.

Even if the Fourth Amendment applied, and assuming Defendant has standing, the Court further agrees with the magistrate judge that the United States had reasonable suspicion for the search of the vessel. "Reasonable suspicion exists . . . if the cumulative information of which the detaining officer is aware suggests criminal activity." *Tinoco*, 304 F.3d at 1116. "To determine whether reasonable suspicion exits, the court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quotations omitted); *United States v. Andreu*, 715 F.2d 1497, 1499–500 (11th Cir. 1983) (combination of factors gave a reasonable suspicion that the vessel was carrying contraband). Officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them. *Id.*

As the report and recommendation makes clear, the United States presented evidence as to the reasons the Coast Guard suspected wrongdoing. Among other things, the vessel was unmarked, flagless, and bore no identifying marks; it was painted blue; it was located far out at sea in an area commonly known for drug trafficking; there was no fishing equipment on board; and there were blue tarps covering its cargo.

Taken as a whole, these factual circumstances support the reasonableness of the Coast Guard's belief that defendants were engaged in drug smuggling. *See, e.g., United States v. Meadows*, 839 F.2d 1489, 1491 (11th Cir. 1988) ("While presence in a suspect area would not, in and of itself, justify a search, the location of the vessel was certainly a legitimate and important factor for the Coast Guard to consider. When a small vessel is found in an area where the typical traffic is involved in either fishing or drug-related activity, and that vessel lacks the usual earmarks of fishing activity, the Coast Guard may certainly be suspicious."); *United States v. Jaramillo Baque*, 754 F. App'x 911, 914 (11th Cir. 2018) (vessel's design and its structural modifications, high-rate of speed, unknown cargo packaged in square shaped bales, location several hundred miles offshore along a known drug-smuggling route and the lack of nationality or other identifying marks gave Coast Guard reasonable suspicion to stop and board the vessel).

That there was neither flight, jettisoning of cargo, other furtive behavior by defendants, or a noticeable smell of drugs—as Defendant points out—does not turn the Coast Guard's suspicion into an unreasonable one. None of the cases cited in Defendant's objections support his proposition that reasonable suspicion cannot exist in the absence of these factors. Additionally, the reasonableness of suspicion is not based on a consideration of each fact, viewed in isolation. *Tinoco*, 304 F.3d at 1116 (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Instead, the determination is made upon consideration of the totality of circumstances. *Hunter*, 291 F.3d at 1306. The magistrate did not err in finding that the circumstances encountered by the Coast

Guard gave rise to a reasonable suspicion that defendants were engaged in illegal activity.

Lastly, Defendant objects to the magistrate judge's recommendation that the statements should not be suppressed because he has not established that the United States violated Rule 5 of the Federal Rules of Criminal Procedure. Pursuant to that rule, "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(B). Defendant was detained on February 9, 2020, arrived in Miami, Florida on President's Day, February 17, and was brought before a magistrate judge in Tampa, Florida on February 18, 2020. He argues that he should have been presented to a magistrate judge on February 17th because there is no per se rule excusing the prompt presentment requirement of Rule 5 on federal holidays, and also because the United States knew he would be arriving within the country.

What constitutes "unnecessary delay" depends upon the facts and circumstances of the case. *See* Notes of Advisory Committee on Rules to Rule 5. The reason for the delay is one of the factors considered. *United States v. Diaz*, 156 F. App'x 223, 225 (11th Cir. 2005) (citing *United States v. Purvis,* 768 F.2d 1237, 1239 (11th Cir.1985)). We agree with the magistrate judge that the availability of a magistrate judge for duty matters does not mean that a magistrate judge is available to conduct in-court proceedings at times when the Court is closed, as on President's Day, especially considering the need to have security and police personnel as well as translators present. This is in spite of the fact that the United States may have some

advance notice that a defendant arrested on the high seas would arrive in the country on a particular holiday on which the court is closed. The Court further agrees that based on the circumstances here—including the journey to Miami from international waters and the presence of a federal holiday—the delay in presenting Defendant was not unnecessary. Defendant was presented to a magistrate judge at the first opportunity and he has, therefore, not shown unnecessary delay under Rule 5(a). *Cabezas-Montano*, 949 F.3d at 592 (placing burden on defendant).

Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1. Defendant Jose Manuel Villa Perez's Objections [Doc. 131] to the Report and Recommendation of the Magistrate Judge are **OVERRULED**.

2. The Report and Recommendation of the Magistrate Judge [Doc. 120] is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

3. Defendant's Motion to Dismiss [Doc. 42] is **DENIED**.

4. Defendant's Supplemental Motion to Dismiss [Doc. 44] is **DENIED**.

5. Defendant's Motion to Suppress [Doc. 45] is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on April 12, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record and Unrepresented Parties, if any

14

Counsel of Record and Unrepresented Parties, if any